UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LAWRENCE DANCIER JACKSON,<br><br>  Plaintiff,<br><br>v.<br><br>SHOSHONE-BANNOCK TRIBAL JUSTICE CENTER; TRIBAL PATROL OFFICER C. SWEAT; LUNITA ARIWITE; SCOTT HEIDE; LESLIE ST. CLAIR; BYRAM BECKSTEAD; SIX UNKNOWN NAMED AGENTS OF THE FED. BUREAU OF NARCOTICS; and SIX UNKNOWN NAMED AGENTS OF THE SHOSHONE-BANNOCK TRIBAL JUSTICE CENTER,<br><br>  Defendants. | Case No. 4:21-cv-00036-DCN<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

Plaintiff Lawrence Dancier Jackson is an enrolled member of the Shoshone-Bannock Tribes and is currently incarcerated in the Shoshone-Bannock Tribal Justice Center. The Clerk of Court conditionally filed Plaintiff's complaint in this case as a result of Plaintiff's status as an inmate and in forma pauperis request. After being notified that the initial complaint did not comply with General Order 342(A), Plaintiff filed an Amended Complaint.[1] The Court now reviews the Amended Complaint to determine whether it or

---

[1] The Amended Complaint is set forth in two separate documents, and each page of each document is identified with a page number. *See* Dkts. 9 & 10. The Court has combined the two documents and

any of the claims contained therein should be summarily dismissed under 28 U.S.C. §§ 1915 and 1915A. Having reviewed the record, and otherwise being fully informed, the Court enters the following Order directing Plaintiff to file a second amended complaint if Plaintiff intends to proceed.

**1.     Screening Requirement**

The Court must review complaints filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity, as well as complaints filed in forma pauperis, to determine whether summary dismissal is appropriate. The Court must dismiss a complaint or any portion thereof that states a frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

**2.     Pleading Standard**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[D]etailed factual allegations" are not required, but a plaintiff must offer "more than ... unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.* (internal quotation marks

---

rearranged the pages accordingly, for purposes of initial review. The Court will cite to the Amended Complaint using Plaintiff's handwritten page numbers, rather than those generated by CM/ECF.

omitted). If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Id.* at 678, 682 (internal quotation marks omitted).

3.  **Factual Allegations**

Plaintiff is an inmate in the custody of the Shoshone-Bannock Tribes. Plaintiff alleges that, in November 2020, he was arrested and placed in handcuffs by Shoshone-Bannock Tribal Patrol Officer C. Sweat. *Am. Compl.*, Dkts. 9 & 10, at 3. Officer Sweat did not inform Plaintiff of the charges or advise Plaintiff of the right to be free from compelled self-examination.

Plaintiff was then taken to the Portneuf Hospital in Bannock County, Idaho, for a COVID-19 examination, evidently as a precaution prior to being placed in the Tribal jail. Defendant Sweat told Plaintiff, "If you are filing a lawsuit against state-sponsored terrorism, I'll be the first terrorist on the list!"[2] *Id.* Plaintiff alleges that this statement evidenced abuse of Sweat's "position of trust and authority as a platform to incite insurrection and rebellion during a state-of-emergency COVID-19 Operation Warp Speed." *Id.* Plaintiff states that he was not tested for COVID-19 before he was taken to the Tribal jail.

At Plaintiff's Tribal arraignment on November 13, 2020, his defense attorney, Scott Heide, allegedly did not adequately represent him. Plaintiff claims that when he asked

---

[2] The Court has regularized the capitalization of all quotations from the Amended Complaint.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 3

Heide about a petition for writ of habeas corpus, Heide said he had never heard of such a petition. *Id*. at 9.

Plaintiff states that the Tribal judge assigned to his case, Lunita Ariwite, held a case management teleconference. During this conference, the judge "held a brief discussion about a personal conversation" she had had with Plaintiff about a request under the Freedom of Information Act ("FOIA"). *Id*. at 4. The FOIA request involved "biotech research [and] human experiments." Plaintiff asserts that the judge's "recollection of the substance of a legal document concerning biological terrorism during COVID-19" shows that Judge Ariwite is aware that Plaintiff is confined under conditions posing a substantial risk to a serious medical need. *Id*.

At one point, Judge Ariwite switched Plaintiff's microphone off, "deliberated" with Plaintiff's defense attorney, and considered whether Plaintiff was competent to stand trial. *Id*. at 5. Plaintiff was referred to Dr. Dann Hall for a competency evaluation.

A pretrial hearing was scheduled for December 22, 2020, but, because of a COVID-19 outbreak, the Tribal courts "were cancelled" until January 4, 2021. *Id*. at 7. Plaintiff alleges that there was no COVID-19 outbreak in the Tribal jail.

Plaintiff claims that Judge Ariwite "participated in a criminal conspiracy in connection to gross flagrant violations of the Idaho State Terrorist Control Act" and committed "human trafficking." *Id*. at 6, 8. Defense attorney Heide and Tribal prosecutor Leslie St. Clair also allegedly participated in this conspiracy, along with Officer Sweat. *Id*. at 10–13. In a Tribal court hearing on January 11, 2021, Tribal prosecutor Byram Beckstead

purportedly "accepted" Officer Sweat's "omission of material facts," thereby becoming a participant in the alleged conspiracy. *Id*. at 14.

Plaintiff also claims that unknown agents have instituted a "continuous criminal enterprise of human trafficking and racketeering to aid and abet 'biological terrorism' during COVID-19 that has infiltrated the Shoshone-Bannock Justice System." *Id*. at 15. Plaintiff states that this criminal enterprise studies "Indigenous People's endurance during a pandemic" as a "biological intelligence activity distinctive in Euthanasia as calculated genocide." *Id*. Plaintiff also alleges that he has been "human trafficked into" the Tribal jail and been subjected to "neuro-linguistic programming" by means of "remote radiology." *Id*. at 17–19.

Plaintiff names as Defendants (1) the Shoshone-Bannock Tribal Justice Center, which is a Tribal governmental entity, (2) Officer Sweat, (3) Judge Ariwite, (4) defense attorney Heide, (5) Tribal prosecutors St. Clair and Beckstead, and (6) unidentified Tribal jail personnel and Tribal and federal government agents.

Plaintiff asserts claims under (1) the federal civil rights statute, 42 U.S.C. § 1983, and (2) *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the federal-defendant equivalent to § 1983. *Am. Compl.* at 1. Plaintiff also asserts claims under federal criminal statutes and Idaho state criminal statutes. Plaintiff seeks monetary damages, criminal prosecution of the named Defendants, and enforcement of the Fort Bridger Treaty of 1868, which established the reservation for the Shoshone-Bannock Tribes. *Id*. at 3–19.

**4.     Discussion**

At least some of Plaintiff's allegations—particularly the allegations that officers of the Tribal court are using the Tribal jail to engage in human experiments, human trafficking, and genocide—are the type of "fantastic or delusional scenarios" that are subject to dismissal as baseless. *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). Additionally, as explained below, the claims that are not obviously delusional are implausible; therefore, the Amended Complaint fails to state a claim upon which relief may be granted.

The Court will, however, grant Plaintiff 60 days to amend the Complaint. Any second amended complaint should take into consideration the following.

**A.     *Standards of Law Governing Plaintiff's Claims***

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible § 1983 claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Section 1983 applies to state and local government actors. It does not provide a remedy for the actions taken by other types of actors, such as purely private actors, "no matter how unfair that conduct may be." *NCAA v. Tarkanian*, 488 U.S. 179, 191 (1988). Under § 1983, "state action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (internal quotation marks omitted). One example of a purely private actor not

subject to suit under § 1983 is a defense attorney. *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding.").

Plaintiff also brings claims under *Bivens*, which implied a cause of action for monetary damages against federal officials for a violation of constitutional rights. 403 U.S. at 392–97. A *Bivens* action is the federal analog to an action brought under § 1983, and a plaintiff asserting a *Bivens* claim must show that the defendant was acting under color of *federal* law. *Cox v. Hellerstein*, 685 F.2d 1098, 1099 (9th Cir. 1982) (holding that "a public defender does not act under color of federal law in performing the … functions [of] a lawyer to an indigent defendant in a federal criminal proceeding").

"As separate sovereigns pre-existing the Constitution," Tribes are not required to comply with "those constitutional provisions framed specifically as limitations on federal or state authority," such as the Bill of Rights. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56 (1978). Although a federal statute grants to Tribal members many of the rights included in the Bill of Rights, *see* 25 U.S.C. § 1302, it does not give rise to a federal cause of action against a Tribal government, and the exclusive federal remedy under that Act, for a person detained under Tribal authority, is habeas corpus relief. *Santa Clara Pueblo*, 436 U.S. at 67; *Tavares v. Whitehouse*, 851 F.3d 863, 866 (9th Cir. 2017).

### B. *The Amended Complaint Does Not State a Plausible Claim under § 1983 or Bivens*

The Amended Complaint does not state a plausible § 1983 or *Bivens* claim because

Plaintiff's allegations do not give rise to a reasonable inference that any Defendant was acting under color of state or federal law. *See Brentwood Acad.*, 531 U.S. at 295; *Cox*, 685 F.2d at 1099.

Section 1983 claims alleging the deprivation of rights under color of Tribal law "cannot be maintained in federal court." *Evans v. McKay*, 869 F.2d 1341, 1347 (9th Cir. 1989). Instead, a plaintiff asserting § 1983 claims against a Tribal official must show that the Tribal official "may fairly be said to be a state actor." *Id.* (internal quotation marks omitted). This requirement is satisfied where, for example, Tribal officials acted "in concert with officers of the state" or acted as enforcers of state or local authority. *Id.* at 1348. Similarly, a Tribal official does not act under color of federal law for purposes of a *Bivens* action unless there is "some interdependence between the federal government" and the official—in other words, unless there is a "symbiotic relationship" between federal and Tribal officers. *Bressi v. Ford*, 575 F.3d 891, 898 (9th Cir. 2009).

The allegations in the Amended Complaint do not give rise to a reasonable inference that any Defendant acted in concert with state or federal officials. Nor is there any plausible allegation that Defendants—most, if not all, of whom are Tribal entities or officials—had a symbiotic relationship with state or federal actors, in the context of the actions described in the Amended Complaint, such that those actions could fairly be read as actions of the state or federal government itself. Conclusory allegations of a conspiracy between Tribal and state or federal actors are insufficient. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action

will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (internal quotation marks, citation, and alteration omitted).

Plaintiff should keep the above standards in mind if he files a second amended complaint.

### C. Plaintiff's Claims under State and Federal Criminal Statutes Are Implausible

Federal criminal statutes do not give rise to civil liability. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Further, a plaintiff has no right to have another person criminally prosecuted. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *Johnson v. Craft*, 673 F. Supp. 191, 193 (D. Miss. 1987) ("The decision to prosecute a particular crime is within the authority of the state, and there appears to be no federal constitutional right to have criminal wrongdoers brought to justice."). Therefore, the Amended Complaint does not state a plausible claim under any of the cited federal criminal statutes.

Plaintiff also cites a variety of Idaho criminal statutes, but the Court lacks jurisdiction to hear state criminal matters. Additionally, it does not appear that a private right of action is authorized under any of the cited statutory provisions.

In *Yoakum v. Hartford Fire Ins. Co.*, the Idaho Supreme Court held that a state criminal statute did not give rise to an implied private right of action. 923 P.2d 416, 421 (Idaho 1996). The court based its decision on the following factors: (1) the statute was enacted to protect the general public, (2) there was no indication that the legislature

intended to create a private cause of action, (3) the statute provided for a criminal punishment, and (4) providing an additional civil remedy was not necessary to assure the effectiveness of the statute. *Id*. The *Yoakum* court noted that "[i]n the absence of strong indicia of a contrary legislative intent, courts must conclude that the legislature provided precisely the remedies it considered appropriate." *Id*. (relying on *Middlesex County Sewerage Auth. v. National Sea Clammers*, 453 U.S. 1, 15 (1981).

The factors identified in *Yoakum* apply equally to the state criminal statutes cited by Plaintiff. Therefore, Plaintiff's state law claims are implausible.

### D. Potential Immunities from Suit

Even if Plaintiff can plausibly allege state action under § 1983 or federal action under *Bivens*, it appears that Plaintiff's most of claims are barred by various immunity doctrines.

Tribes and Tribal governmental entities enjoy common-law sovereign immunity from suit. *Stock West Corp. v. Lujan*, 982 F.2d 1389, 1398 (9th Cir. 1993). Therefore, absent a waiver of sovereign immunity,[3] a plaintiff cannot sue a Tribe or a Tribal entity such as the Shoshone-Bannock Tribal Justice Center in federal court. *See Kennerly v. United States*, 721 F.2d 1252, 1258–59 (9th Cir. 1983) (holding that, because "there has been no express waiver [of sovereign immunity] or consent to suit, nor any congressional authorization for such a suit against the Tribe, [the federal courts] are without

---

[3] For example, in *Armstrong v. Mille Lacs County Sheriff's Department*, 228 F. Supp. 2d 972, 981-82 (D. Minn. 2002), the court determined that the Mille Lacs Tribe could be sued in federal court because, in a cooperative agreement between the Tribe and the county, the Tribe had expressly waived sovereign immunity for torts arising in the scope of law enforcement activities.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 10

jurisdiction"). Tribal officers are also immune from suit if they were "acting within the scope of their delegated authority." *Hardin v. White Mountain Apache Tribe*, 779 F.2d 476, 479–80 (9th Cir. 1985).

Under the doctrine of absolute judicial immunity, a judge is not civilly liable for acts performed in the exercise of her judicial functions. *Stump v. Sparkman*, 435 U.S. 349, 355–56 (1978). Absolute immunity for judicial officers "is justified and defined by the functions it protects and serves, not by the person to whom it attaches." *Forrester v. White*, 484 U.S. 219, 227 (1988).

"[J]udicial immunity is not overcome by allegations of bad faith or malice." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). If a judge was acting in a judicial capacity, absolute immunity applies "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) (en banc) (internal citations omitted).

Judicial immunity extends to Tribal judges. Thus, Tribal judges are "immune from civil liability for damages for acts committed within their judicial jurisdiction." *Brunette v. Dann*, 417 F. Supp. 1382, 1386 (D. Idaho 1976) (applying the "general doctrine" of absolute judicial immunity to a Tribal setting).

Prosecutors have absolute immunity for actions they take as integral parts of the criminal judicial process. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). These actions include initiating and pursuing a criminal prosecution, *id.* at 410, preparing and filing charging documents, *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997), participating in

hearings, and "making false or defamatory statements in judicial proceedings," *Burns v. Reed*, 500 U.S. 478, 490 (1991).[4]

5.  **Standards for Second Amended Complaint**

Any second amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon, attach, or incorporate by reference other pleadings or documents. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint). Plaintiff must set forth each different factual allegation in a separate numbered paragraph. The second amended complaint must be legibly written or typed in its entirety, and it should be clearly designated as a "Second Amended Complaint." Plaintiff's name and address

---

[4] Prosecutors are not absolutely immune if they conduct their own investigations, if they fabricate evidence, or if they elicit known false evidence for use in a prosecution. *See Milstein v. Cooley*, 257 F.3d 1004, 1011 (9th Cir. 2001). However, absolute prosecutorial immunity does extend to "the knowing use of false testimony at trial, the suppression of exculpatory evidence, and malicious prosecution." *Id.* at 1008; *see Broam v. Bogan*, 320 F.3d 1023, 1029-30 (9th Cir. 2003). If a prosecutor is not entitled to absolute immunity, the prosecutor may still be entitled to qualified immunity, which insulates all governmental actors from liability for money damages other than "the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal quotation marks omitted).

INITIAL REVIEW ORDER BY SCREENING JUDGE - 12

should be clearly printed at the top left corner of the first page of each document filed with the Court.

## ORDER

**IT IS ORDERED:**

1. The Amended Complaint fails to state a claim upon which relief may be granted. Plaintiff has 60 days to file a second amended complaint as described above. If Plaintiff does so, Plaintiff must file (along with the amendment) a Motion to Review the Second Amended Complaint. If Plaintiff does not amend within 60 days, this case may be dismissed without further notice. *See Knapp v. Hogan*, 738 F.3d 1106, 1110 (9th Cir. 2013) ("When a litigant knowingly and repeatedly refuses to conform his pleadings to the requirements of the Federal Rules, it is reasonable to conclude that the litigant simply *cannot* state a claim."). Alternatively, Plaintiff may file a Notice of Voluntary Dismissal, within 60 days, if Plaintiff no longer intends to pursue this case.[5]

2. Plaintiff's request for appointment of counsel (contained in the Complaint) is DENIED without prejudice.[6] Plaintiff may renew the request for counsel

---

[5] A voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1) is not a dismissal for frivolity, for maliciousness, or for failure to state a claim upon which relief may be granted and, therefore, does not count as a "strike" under 28 U.S.C. § 1915(g).

[6] Plaintiff requests counsel under 25 U.S.C. § 175, which provides, "In all States and Territories where there are reservations or allotted Indians the United States attorney shall represent them in all suits at law and in equity." *See Am. Compl.* at 1, 20. However, that statute is discretionary, not mandatory. *Siniscal v. United States,* 208 F.2d 406, 410 (9th Cir. 1953); *see also United States v. Pend Oreille Pub. Util. Dist. No. 1*, 28 F.3d 1544, 1553 (9th Cir. 1994) ("The United States has discretion to represent the

in a second amended complaint.

DATED: April 12, 2021

_____
David C. Nye
Chief U.S. District Court Judge

---

individual Indian allottees under 25 U.S.C. § 175."). Section 175 also does not "override the general test for appointment of counsel under the in forma pauperis statute, 28 U.S.C. § 1915(e)(1)." *Robinson v. New Jersey Mercer Cty. Vicinage-Fam. Div.*, 514 F. App'x 146, 151 (3d Cir. 2013) (unpublished).

INITIAL REVIEW ORDER BY SCREENING JUDGE - 14